#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF SOUTH CAROLINA
#### COLUMBIA DIVISION

| | |
|---|---|
| SOUTH CAROLINA STATE CONFERENCE OF THE NAACP,<br><br>Plaintiff,<br><br>v.<br><br>TONNYA K. KOHN, in her official capacity as South Carolina State Court Administrator;<br><br>DONALD W. BEATTY, in his official capacity as Chief Justice of the South Carolina Supreme Court,<br><br>Defendants. | C/A No.: 3:22-cv-01007-MGL<br><br><br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

The Defendants, Tonnya K. Kohn, in her official capacity as South Carolina State Court Administrator, and Donald W. Beatty, in his official capacity as Chief Justice of the South Carolina Supreme Court, by and through their undersigned counsel, submit this Reply in Support of their Motion to Dismiss, ECF No. 12. For the reasons that follow, as well as those set forth in Defendants' motion, the Court should dismiss this action in its entirety.

**I. Factual Misrepresentations in Plaintiff's Response**

As a preliminary matter, Plaintiff makes fundamental misrepresentations in its Statement of Facts that are integral to Plaintiff's claims and should be clarified to assist this Court in reviewing the pending motion. Plaintiff also misleadingly argues to this Court that there are "no alternative channels through which Plaintiff can access and record the information it seeks." ECF No. 26, p. 36.

1

As previously discussed, Rule 610, SCACR, provides a process by which a person or entity may seek and receive bulk distribution of or compiled information from judicial records. *See* Rule 610, SCACR. *See also* ECF No. 12, p. 8; Hilke Aff., ECF No. 12-1, ¶ 13. This process is important to the resolution of this motion because it provides an alternative avenue by which Plaintiff can seek information in bulk, which Plaintiff has repeatedly alleged is its goal. Critically, Defendants submit that any challenge concerning whether the Rule 610 process is adequate or appropriate for Plaintiff's needs is not ripe and cannot be considered by this Court because Plaintiff does not allege that it ever submitted a Rule 610 request. *See Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court."); *Franks v. Ross*, 313 F.3d 184, 195 (4th Cir. 2002) (holding that a controversy was not ripe for review where several steps of the administrative review process remained incomplete); *Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992), *as amended* (Nov. 2, 1992) ("The controversy must be ripe for judicial resolution, that is, in the context of an administrative case, there must be an administrative decision that has been formalized and its effects felt in a concrete way by the challenging parties.") (internal quotation marks and alteration omitted).

Plaintiff curiously asserts that "Court Administration theoretically has a process for bulk data distribution upon request under Rule 610, but, when the South Carolina NAACP tried to make use of the process, Defendants stated that they would not consider providing Plaintiff with the information it requested and ceased to respond to subsequent outreach from Plaintiff to clarify this refusal." ECF No. 26, p. 3. This is both a misstatement as to what actually occurred and misleading to the Court. As can been seen from the attached correspondence, on August 5, 2021, Plaintiff wrote a letter to Defendant Kohn asserting Plaintiff's belief that it had a "right to use a data scraper

to gather information from South Carolina's Public Index." *See* Correspondence, filed as an exhibit hereto, pp. 6-7.[1] The letter specifically and exclusively related to scraping data rather than Rule 610. Likewise, the ensuing emails between Plaintiff and the Judicial Branch make it clear that the parties were discussing scraping rather than a Rule 610 request. *See id.*, p. 4 ("As you may be aware, our new housing navigator program would like to scrape data from the Public Index . . . ."); *id.*, p. 3 ("[A]s mentioned in our August 6 letter, we plan to begin gathering data soon.") (emphasis added); *id.*, p. 2 ("It is Court Administration's position that data scraping is not protected under the First Amendment."); *id.*, p. 1 ("From our discussion, I understand that you believe that there is no technical avenue through which we could scrape the data . . . ."). At the end of this email exchange, an attorney for the Judicial Branch directed the Plaintiff to Rule 610 and provided instructions on submitting a Rule 610 request, a copy of Rule 610, and a Rule 610 request form. *See id.*, pp. 8-15. This much is confirmed by Plaintiff in the Complaint. *See* ECF No. 1, ¶ 74.

---

[1] This correspondence is properly considered by the Court because it is concerns ripeness, which is a jurisdictional issue pursuant to Rule 12(b)(1). *See, e.g., United States v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (holding that information outside of the pleadings is properly considered where there is a challenge to jurisdiction).

It is also properly considered because Plaintiff makes clear in its Response, ECF No. 26, pp. 10-11, that this correspondence was the impetus for bringing the instant matter. *See Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir.1999) ("A court can consider documents outside of the pleadings, without converting the motion to one for summary judgment, so long as the documents are integral to and explicitly relied on in the complaint."). *See also Defs. of Wildlife v. Boyles*, No. 2:22-CV-00112-RMG, 2022 WL 2223035, at *5 (D.S.C. June 17, 2022) ("[F]or an extrinsic document to be integral to a complaint the document must either give rise to a claim or be the basis of an element of a claim."); *McGlothian v. Fralin*, No. 3:18CV507(REP), 2019 WL 1087156, at *8 (E.D. Va. Jan. 23, 2019), *report and recommendation adopted*, No. 3:18CV507, 2019 WL 1089089 (E.D. Va. Mar. 7, 2019) (the court considered defendants' exhibits, including prior communications between the parties, in reviewing defendants' 12(b)(6) Motion to Dismiss on finding that they were "integral to Plaintiffs' Amended Complaint because they are expressly referred to in Plaintiffs' factual allegations and they form the basis for Plaintiffs' arguments").

Plaintiff does not allege that it ever submitted the Rule 610 form.[2] Therefore, any complaint concerning the validity or sufficiency of the Rule 610 process is not ripe for review.

**II. Plaintiff's Response Misapprehends Precedent Regarding Abstention**

The Fourth Circuit has instructed that the "doctrine [of abstention] has many forks and prongs, [but] its central idea has always been one of simply comity." *Johnson v. Collins Entertaining Co., Inc.*, 199 F.3d 710, 719 (4th Cir. 1999) (internal citations omitted). The principles of comity and federalism plainly support abstention in this matter. However, as fully briefed in Defendants' Motion, these concerns for comity and federalism also underscore and implicate the appropriateness of abstention pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

Contrary to Plaintiff's interpretation of the case, the Fourth Circuit's opinion in *Courthouse News Service v. Schaefer*, 2 F.4th 318 (4th Cir. 2021) does not foreclose abstention in this matter under any fork or prong of the doctrine. The district court in *Schaefer* found that abstention was not warranted pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) because there was no ongoing state proceeding. *Schaefer*, 2 F.4th at 324. The Fourth Circuit, on review, concluded that the district court did not abuse its discretion in denying the motion to abstain because "*Younger* and its progeny limit injunctive relief that would interrupt an ongoing state judicial proceeding." *Id*. As a preliminary matter, therefore, *Schaefer* is distinguishable from the present case because the

---

[2] Plaintiff could not ethically allege that a formal Rule 610 request was made or denied. Quite the contrary, the Judicial Branch has gone to great lengths to meet and speak with Plaintiff and its representatives in an effort to understand the information Plaintiff seeks and to ease the Rule 610 process to fulfill as much of Plaintiff's needs as possible. *See generally* ECF No. 9, p. 1. Suggesting otherwise, as Plaintiff does at ECF No. 26, p. 37, is a blatant misrepresentation and does a disservice to the time spent by the Judicial Branch in attempting to address Plaintiff's needs.

Defendants have not asserted there is an ongoing state proceeding or that abstention is appropriate pursuant to *Younger*.

Further, the deferential standard of review applied in *Schaefer* and, more generally, to any district court's order on a motion for abstention, is instructive. An abuse of discretion standard is based, at least in part, on the recognition that the district court judge is in the best position to evaluate the relevant facts. *See E.E.O.C. v. Mega Contractors, Inc.*, 8 F. App'x 241, 243 (4th Cir. 2001) ("This deference arises out of the realization that the 'district court is in the best position to review the factual circumstances and render an informed judgment as it is intimately involved' with the proceedings in the case.") (*citing Blue v. U.S. Dep't of Army,* 914 F.2d 525, 538 (4th Cir.1990)). Therefore, the underlying facts in *Schaefer* are important—and distinguishable—from the present matter.

In *Schaefer*, the clerks of court in two Virginia counties did not make significant percentages of complaints publicly available for up to two or more days after filing, and the district court found that the clerks were "without any justification for the delays." 2 F.4th at 323. Applying these facts, the district court in *Schaefer* concluded that federal review of the practices of two Virginia Circuit Court Clerks "would not excessively entangle a federal court in the states' own internal affairs" and, thus, did not "require abstention." *Courthouse News Service v. Schaefer*, 629 F. Supp. 3d 196, 207 (E.D.Va. 2019). Instead, "if the Court were to grant the Plaintiff's relief, the Clerks can still operate their offices, they would just have to release filings faster." *Id*., n. 5. Thus, in *Schaefer*, the issue was more of an unjustified failure to act to make records available as compared to a purposeful policy decision.

In the present matter, there is no allegation that the defendants have failed to make any complaints—or other documents, like docket sheets—publicly available. *See* Complaint, ¶¶ 41,

56, 81. Moreover, the present action is not a challenge to the individual and unwarranted actions of a handful of clerks of court within South Carolina. Instead, it is a challenge to the exercise of South Carolina Constitutional authority and discretion exercised by the Chief Justice of the South Carolina Supreme Court as head of the Judicial Branch pursuant to Article V, Section 4 of the South Carolina Constitution in both a rule-making and administrative capacity, which followed a thorough review of the relevant variables, including technical limitations on "scraping" and the purposeful implementation of Rule 610. *See* Hilke Aff., ECF No. 12-1. Further, it presents serious challenges to the functioning of the South Carolina Case Management System and its Public Index. *See id*. Therefore, a federal court order would almost certainly entangle this Court in the internal affairs of the South Carolina Judicial Branch and require ongoing oversight of the Case Management System, including its technical capacities and functions, as well as oversight of the ongoing, future project to develop a modern web-based replacement Case Management System. *See id*. This oversight is currently vested in the South Carolina Judicial Branch, as headed by the Chief Justice of the South Carolina Supreme Court. Consequently, the Complaint is an invitation for this court to substitute either its judgment or Plaintiff's judgment for that of the South Carolina Judicial Branch, which is the very basis for every doctrine of abstention. *See Johnson,* 199 F.3d at 719 ("Basic abstention doctrine requires federal courts to avoid interference with a state's administration of its own affairs.").

### III. Additional Issues in the Response

Plaintiff acknowledges the important point that even if the First Amendment requires access to a particular record or proceeding, such access is qualified rather than absolute. ECF No. 26, pp. 17, 18. Despite acknowledging this fundamental principle of law, the Plaintiff's Response is full of sweeping generalizations totally divorced from common sense or the context of this case.

For instance, Plaintiff alleges without citation to authority that a "right of access attaches regardless of how the docket sheets are stored or *how* the public seeks to access them . . . ." ECF No. 26, p. 18. Plaintiff further alleges that "Defendants may not limit or deny the South Carolina NAACP access to those records without triggering First Amendment scrutiny." ECF No. 26, pp. 23-24. The infirmity of this type of reasoning is obvious in the face of simple examples. If the right of access exists regardless of *how* the public seeks to access a particular record, would a court clerk be required to permit a group of 200 researchers to access the file room so they could review all court files at once? Would that clerk be required to permit that group to bring with it dozens of copy machines so that the group could more quickly make copies of files? Would the clerk be required to permit that group to take down a wall of the file room in order to more easily bring in its copiers and take out its copies? The obvious answer is no, and this type of reasoning has been explicitly rejected by the Supreme Court. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 12 (1978) ("The right to speak and publish does not carry with it the unrestrained right to gather information."). The *Houchins* Court also rejected the "truncated flow" of information argument advanced by Plaintiff. *Id.*[3]

Plaintiff also relies on cases that recite only general propositions or that are otherwise mostly irrelevant to the current matter.[4] For example, two of the cases most relied on by Plaintiff—*Hartford Courant* and *Antar*—both involved the complete denial of access to information. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 86 (2d Cir. 2004) (case involving a policy of the Connecticut state court system whereby thousands of cases that had been adjudicated were sealed from any public access and, in some cases, court personnel were prohibited from even acknowledging the existence of the case); *United States v. Antar*, 38 F.3d 1348, 1350 (3d Cir.

---

[3] The Response does not discuss *Houchins* or make any attempt to distinguish it.
[4] In fact, Plaintiff does not cite a single case holding that any First Amendment right to access includes a right to scrape.

7

1994) (case involving the improper sealing of the transcript of jury voir dire). As Defendants have repeatedly pointed out, this case does not involve a *denial* of access. *See, e.g.*, ECF No. 12, p. 17. Plaintiff also seems to readily acknowledge this. ECF No. 26, p. 18 ("In this case, the court records that the South Carolina NAACP must access so that it can participate in and serve as a check on the judicial process are the docket sheets that Court Administration maintains and makes available through the Public Index.") (emphasis added). Again, despite acknowledging its ability to access this information, Plaintiff disingenuously suggests throughout the Response that access has been "denied." *See, e.g.*, ECF No. 26, p. 18 ("denial of access"); *id.*, p. 24 ("Defendants deny access"); *id.*, p. 31, n. 12 ("blanket denial on access"); *id.*, p. 36 ("There are no alternative channels through which Plaintiff can access and record the information it seeks."). In doing so, Plaintiff attempts to align this case with cases where access has been denied outright. This is essentially an invitation for the Court to ignore the context of this case, which is contrary to the applicable standard of review. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

      Plaintiff also attempts to recast this case as one involving the right to "record" information, just like taking notes, taking photographs, and painting pictures. *See* Response, ECF No. 26, pp. 27-3. Even putting aside the obvious lack of utility of this analogy, this line of reasoning is foreclosed by cases that address whether the right to access trials includes the right to video record the proceedings. *See* ECF No. 12, pp. 21-23. Plaintiff also undermines its own argument by suggesting how different the act of scraping is from televising court proceedings, ECF No. 26, p. 23, n. 9, while simultaneously suggesting that scraping is akin to taking pictures of animals or videoing police activity.

Contrary to Plaintiff's assertion, cases involving media access to court records or proceedings have a direct and obvious correlation to the allegations in this case. Media cases typically deal with court proceedings, which are presumptively open. They further deal with a particular kind of user alleging that a simpler form of access is less useful without the more expansive form of access to accompany it. Plaintiff is likewise a unique type of user arguing about a particular form of access over and above what is otherwise available to the public. Like the media, Plaintiff has no right of access beyond the access provided to the general public. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978) ("The First Amendment generally grants the press no right to information about a trial superior to that of the general public.").

## CONCLUSION

Based on the foregoing, the Court should enter an Order dismissing this action in its entirety pursuant to the doctrine of abstention or because Plaintiff has failed to allege a First Amendment claim.

    Respectfully submitted,

    CROWE, LAFAVE, GARFIELD & BAGLEY, LLC

By:   *s/ Steven R. Spreeuwers*
Robert D. Garfield, Fed. ID No. 7799
Steven R. Spreeuwers, Fed. ID No. 11766
2019 Park Street
Columbia, South Carolina 29201
T: (803) 999-1225
F: (803) 848-8157
robert@crowelafave.com
steve@crowelafave.com

–and–

ROBINSON GRAY STEPP & LAFFITTE, LLC

|  |  |
|---|---|
| By: | *s/ Rachel M. Hutchens* |
|  | Rachel M. Hutchens (Fed. I.D. 12696) |
|  | 1310 Gadsden Street |
|  | Post Office Box 11449 |
|  | Columbia, South Carolina 29211 |
|  | (803) 929-1400 |
|  | Email: rhutchens@robinsongray.com |

–and–

LINDEMANN & DAVIS, P.A.

|  |  |
|---|---|
| BY: | *s/ Andrew F. Lindemann* |
|  | Andrew F. Lindemann, Fed. ID No. 13030 |
|  | Post Office Box 6923 |
|  | Columbia, South Carolina 29260 |
|  | T: 803-881-8920 |
|  | Email: andrew@ldlawsc.com |

*Counsel for Defendants*

September 2, 2022