**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| SOUTH CAROLINA STATE CONFERENCE OF THE NAACP,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>TONNYA K. KOHN, in her official capacity as South Carolina State Court Administrator;<br><br>DONALD W. BEATTY, in his official capacity as Chief Justice of the South Carolina Supreme Court,<br><br>　　　　　　　　　　Defendants. | Case No. 3:22-cv-01007-MGL |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff South Carolina State Conference of the NAACP ("South Carolina NAACP") serves this First Set of Requests for Production of Documents ("Requests") on Defendants Tonnya K. Kohn and Donald W. Beatty ("Defendants"). South Carolina NAACP requests that, within thirty (30) days of service of these Requests, Defendants produce the documents described in **Schedule A**, attached, in accordance with the Definitions and Instructions provided in **Schedule B**, attached. Where possible, production should be accomplished by electronic means. Production of physical items or copies of documents may, if necessary, be produced to the offices of the American Civil Liberties Union Foundation of South Carolina, P.O. Box 1668, Columbia, SC, 29202, or at such other time and place as may be mutually agreed by the parties.

# EXHIBIT A

Dated: September 28, 2022     By: __/s/ Allen Chaney_____

| | |
|---|---|
| Allen Chaney<br>Fed. Id. 13181<br>ACLU Foundation of South Carolina<br>P.O. Box 1668<br>Columbia, SC 29202<br>Tel.: (843) 282-7953<br>achaney@aclusc.org | Joe Schottenfeld*<br>Martina Tiku*<br>NAACP<br>4805 Mt. Hope Drive<br>Baltimore, MD 21215<br>Tel.: (410) 580-5777<br>jschottenfeld@naacpnet.org<br>mtiku@naacpnet.org |

Esha Bhandari (admitted *pro hac vice*)
Sandra S. Park (admitted *pro hac vice*)
Laura Moraff (admitted *pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
ebhandari@aclu.org
spark@aclu.org
lmoraff@aclu.org

*Application for admission *pro hac vice*     *Counsel for Plaintiffs*
forthcoming

# **EXHIBIT A**

## SCHEDULE A
## DOCUMENT REQUESTS

1. Documents sufficient to show each of Defendants' "twelve policies" referred to in ECF No. 12-1 at ¶15 with respect to general rate limits and specific data mining behaviors.

2. Documents sufficient to show the current system capacity of the Public Index during regular operation (including but not limited to processor cycles, memory, storage throughput, network bandwidth, storage capacity, and load).

3. Documents sufficient to show whether and how any other system resources or constraints affect or limit the operation or usability of the Public Index during regular operations.

4. Documents sufficient to show whether and how any particular system component of the Public Index—including but not limited to processor cycles, memory, storage throughput, network bandwidth, storage capacity, or load—limits the availability of the Public Index at any given time.

5. All documents related to the performance, stability, and uptime of the Public Index, including but not limited to incident reports, performance evaluations, monitoring visualizations, and maintenance windows, from January 1, 2021 to present.

6. Documents sufficient to show the effects on the Public Index's underlying system resources (including but not limited to the effect on CPU, RAM, and network bandwidth) for any and all time periods during which manual or automated queries to the Public Index strained the Public Index's system capacity and / or limited access to the Public Index from January 1, 2018 to the present.

7. Documents sufficient to show which vendors and which services Defendants

# EXHIBIT A

have used since January 1, 2018 to protect the Public Index. *See* ECF No. 12-1 at ¶17.

8. Documents sufficient to show which other vendors or services, if any, Defendants tested or otherwise considered using between January 1, 2018 and the present, besides the service(s) Defendants actually use(d) to protect the Public Index.

9. All documents, including internal communications, reflecting the decision-making process Defendants used to determine which service(s) to use to protect the Public Index between January 1, 2018 and the present.

10. All "analyzed web log data" presented by Defendants to the vendor(s) that supplied any website protection service(s) for the Public Index from January 1, 2018 to the present. ECF No. 12-1 at ¶17.

11. All backend reports, system queries, and debugging information presented by Defendants to the vendor(s) that supplied any website protection service(s) in relation to the Public Index from January 1, 2018 to the present.

12. Documents sufficient to identify and explain all "configuration options" that all of Defendants' vendors make available to Defendants to protect Defendants' websites. ECF No. 12-1 at ¶ 18.

13. Documents sufficient to show which configuration options Defendants have used between January 1, 2018 and today.

14. All documents that describe the decision-making process Defendants use when considering changes to the configuration options.

15. Documents sufficient to show the annual cost of the service(s) Defendants purchased in November of 2018 for each year from the date of purchase to today.

16. Documents sufficient to show the annual cost to Defendants of running and

**EXHIBIT A**

maintaining all services that Defendants currently use to block automated queries to the Public Index.

17. Documents sufficient to show any performance reviews or performance evaluations conducted by Defendants of their website protection services between January 1, 2018 and today.

**EXHIBIT A**

## SCHEDULE B
## DEFINITIONS AND INSTRUCTIONS

### Definitions

Unless specifically stated otherwise, for purposes of these Requests, the following words have the meanings set forth below:

1. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

2. The terms "plaintiff" and "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person not a party to the litigation.

3. "Person" means any natural person or any entity, including, without limitation, any business or governmental entity or association.

4. "Entity" or "entities" includes any organization, association, group, business, sole proprietorship, partnership, corporation, company, or enterprise.

5. "All," "any," and "each" shall be construed as encompassing any and all. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

6. "Including," in all of its forms, means including without limitation.

7. Use of the singular form of any word includes the plural and vice versa.

# EXHIBIT A

8. "Public Index" means the collection of publicly accessible websites containing docket entries for South Carolina state court cases maintained by the South Carolina Judicial Branch.

9. "General rate limits" means limitations used to control the transmit rate at which traffic enters and exits network locations. Rate limits might be aggregated or enforced based on many different categories, including peer destination IP address, data element, or account identifier.

10. "Data mining behaviors" means processes of uncovering patterns or information from a website.

11. "Analyzed web log data" means any information about the Public Index that was collected, used, or referenced for the purpose of avoiding or defeating attacks on the Public Index.

12. "Configuration options" means any settings that a service offers that may be selected or changed for the purpose of creating or configuring protection for a website or other network service.

13. In addition to the definitions used in paragraphs 9-12 above, the terms "general rate limits," "data mining behaviors," "analyzed web log data," and "configuration options," should also be construed as including, for the purposes of this request for production, the meanings intended by Joel Hilke in ECF No. 12-1 ("Hilke Declaration").

14. "System component" means any hardware element, process, program, utility, network service, or other asset that contributes to a website's functionality.

# EXHIBIT A

15. "System resource" means any measurable feature of a computer system that is necessary for its operation, including but not limited to processor cycles, memory, storage throughput, network bandwidth, and storage capacity.

16. "System capacity" means the available amount of any system resource.

17. "CPU" means central processing unit, the core element that performs computation. Modern computer systems often have more than one CPU.

18. "Processor cycles" means the number of operations that a computer system's CPUs are capable of performing, with capacity typically measured in instructions or cycles per second.

19. "Memory" means a computer system's hardware capacity for high-speed storage and retrieval of information for immediate (ephemeral, non-permanent) use. Also known as "RAM".

20. "Storage throughput" means the average rate at which data is transferred from a computer system's memory or CPU to its internal permanent storage units (colloquially called "disks" though many modern computer systems have no physical disks).

21. "Network bandwidth" means the maximum amount of data that could be transferred between network locations.

22. "Storage capacity" means the maximum amount of data a computer system can retain in permanent (non-ephemeral) storage.

23. "Load" is a measurement indicating the number of outstanding processes running on a computer system, or ready to be run on a computer system at any given time.

**EXHIBIT A**

24. "Uptime" means the period or proportion of time a website or other network service is functioning and available for use.

25. "Incident report" means a notification to a user or administrator of a website, or other network service about an abnormal event, process, or action identified in relation to the service or the computer systems that support it.

26. "Performance evaluation" means an assessment of a website or other network service's functionality overall and/or how well various system components are operating.

27. "Monitoring visualizations" means a depiction, such as a graph, chart, or video of the functionality of various system components of a website or other network service.

28. "Maintenance window" means a scheduled outage of services over a website or other network service for the sake of planned changes, upgrades, and/or repairs.

29. "Backend report" means any evaluation of computer system components made by or for engineers or system administrators that include components other than the user-facing website interface.

30. "System query" means the context, structure, and output of any technical investigation designed to produce a description of some aspect of the computer system in operation, including database queries, log analysis, and statistical summaries.

31. "Debugging information" means information typically used by engineers or system administrators to identify, report, or fix issues with the Public Index.

32. "Performance reviews or performance evaluations" means any review of how various system components are functioning.

**Instructions**

1. Respond to each numbered request separately.

# EXHIBIT A

2.  In responding to these Requests, produce all responsive Documents in your possession, custody, or control, regardless of the location of such Documents, including those in the possession, custody, or control of your employees, members, agents, representatives, attorneys, advisors, or consultants.

3.  Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests for production of Documents are deemed continuing to the fullest extent permissible and apply to all Documents that subsequently come into your possession, custody, or control.

4.  Documents shall be produced as required by Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure, and in accordance with any stipulation or order regarding the production of ESI in this matter.

5.  Each requested Document shall be produced in its entirety together with any attachments, drafts, and non-identical copies, including copies that differ by virtue of handwritten or other notes or markings. If a Document responsive to these Requests cannot be produced in full, it shall be produced to the extent possible together with an explanation of why production of the remainder is not possible. Documents contained in file folders, loose-leaf binders, and notebooks with tabs or labels identifying such documents shall be produced intact together with such documents. Documents attached to each other shall not be separated, and all such attached documents shall be produced. Documents shall be produced in the order in which they were maintained.

6.  If you object to any request herein, specify (a) whether Documents are being withheld on the basis of the objection, and (b) if any Documents are being produced notwithstanding the objection. If you object to any request only in part, specify

# EXHIBIT A

the portion of the request you deem objectionable and produce all Documents responsive to the remainder of the request. If the objection is based on a claim of privilege or immunity, see Instruction No. 8 below.

7.     If, in a response to a Request, you represent that you are unable to comply with a Request in full or in part, provide a statement (a) identifying the portion(s) of the Request with which you are unable to comply; (b) affirming that a diligent search and a reasonable inquiry has been made in an effort to comply with the Request; (c) specifying whether the inability to comply is because the particular Document, or category of Documents, never existed, has been destroyed, has been lost, misplaced, or stolen, or has been, and is no longer, in your possession, custody, or control; and (d) furnishing a list specifying each Document and setting forth (i) its type, (ii) its general subject matter and substance, (iii) its date, (iv) the identity of each person known or believed to have knowledge of the content of each lost, discarded, or destroyed Document, (v) the identity of all persons authorized or having knowledge of the circumstances surrounding loss or disposal of the Document, and (vi) the identity of the person(s) who lost, discarded, or destroyed the Document.

8.     If any Document responsive to a Request, or portion of a Request, is withheld or redacted by you under a claim of privilege or immunity, provide the information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure.

9.     Whenever necessary to bring within the scope of these Requests any Documents that might otherwise be construed to be outside their scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses; (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa; (c) the disjunctive

9

# EXHIBIT A

shall be deemed to include the conjunctive and vice versa; and (d) all date ranges shall be inclusive of the first and last dates identified.

10. References to any entity include the entity and any person or entity under its control, including any present and former component agencies, subsidiaries, predecessors, successors, officers, directors, agents, employees, shareholders, partnerships, general and limited partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing.

11. References to any person include the person and any person or entity under that person's control, including all present and former component agencies, subsidiaries, predecessors, successors, officers, directors, agents, employees, shareholders, partnerships, general and limited partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing.

12. If, in responding to these Requests, you perceive any Request, definition, or instruction to be vague, ambiguous, or overbroad, respond to the Request as clarified and/or narrowed in a way that you no longer deem to be vague, ambiguous, or overbroad. Your response shall set forth the matter deemed vague, ambiguous, or overbroad; set forth the construction used in responding; and respond in full to the best of your ability.

# EXHIBIT A