

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| SOUTH CAROLINA STATE CONFERENCE, § <br> OF THE NAACP, § <br>     Plaintiff, § <br> § <br> vs. § <br> § <br> TONNYA K. KOHN, *in her official capacity as* § <br> *South Carolina State Court Administrator*; § <br> DONALD W. BEATTY, *in his official capacity* § <br> *as Chief Justice of the South Carolina Supreme* § <br> *Court*, § <br>     Defendants. § | Civil Action No.: 3:22-01007-MGL |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS**

**I.    INTRODUCTION**

Plaintiff South Carolina State Conference of the NAACP (the NAACP) filed this 42 U.S.C. § 1983 action against Tonnya K. Kohn and Donald W. Beatty (collectively, Defendants). The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331.

Pending before the Court is Defendants' motion to dismiss. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Defendants' motion to dismiss will be denied.

1

## II.     FACTUAL AND PROCEDURAL HISTORY

This case involves the NAACP's First Amendment challenge of Defendants' categorical prohibition against "scraping" information contained in the electronic docket sheets on the Public Index, the online county-by-county database of legal filings in South Carolina state court.

As alleged in the complaint, "scraping" is a way to automatedly access and record information already available online. It is both faster than manual searching, and it prevents the potential for human error. Although Defendants permit manual searching of the Public Index, it has banned scraping.

The NAACP's Housing Navigator program engages in eviction protection advocacy. To effectively achieve its goals, the NAACP must access and record the names and addresses of tenants who have eviction actions filed against them, because tenants have only ten days from receipt of an eviction notice to request a hearing.

The NAACP alleges it is impossible for it to find all tenants subject to eviction actions quickly enough to provide the necessary support using manual searching. Although South Carolina Appellate Court Rule 610 (Rule 610) theoretically has an alternative process for bulk data distribution, the NAACP contends it was stymied from utilizing that process. *See* Rule 610(e) ("The Office of Court Administration may authorize bulk distribution of or compiled information from judicial records if it determines, in its discretion, that the resources are available to compile the information; the substantial public interest will be served through significant scholarly, governmental, journalistic, research, evaluation, or statistical purposes; and the identity of specific individuals is ancillary to the request").

The NAACP insists that "[r]esponsible scraping does not interfere with a website's functionality[,]" Complaint ¶ 9, and the NAACP's scraping would pose at most a *de minimus* burden on the functionality of the Public Index.

The NAACP filed this action, and Defendants moved to dismiss. The NAACP responded and Defendants replied. Defendants moved to stay discovery pending resolution of this matter, which the Court granted, with the exception of discovery responses due before the motion to stay was filed. The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the motion.

## III. STANDARD OF REVIEW

### A. *Ripeness*

To be justiciable under Article III, a case must be ripe, that is "not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all[.]" *See Trump v. New York*, 141 S. Ct. 530, 535 (2020) (internal quotation marks omitted).

"The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in a 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). "The burden of proving ripeness falls on the party bringing suit." *Id.* at 319.

"In evaluating the ripeness of claims for judicial review, courts must balance the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002) (internal quotation marks omitted).

The fitness prong requires "the issues [in the case to be] purely legal and . . . the action in controversy [be] final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319. "The

3

hardship prong is measured by the immediacy of the threat and the burden imposed" on the plaintiff. *Charter Fed. Sav. Bank. v. Office of Thrift Supervision*, 976 F.2d 203, 208–09 (4th Cir. 1992). "When considering hardship, [the Court] may consider the cost to the parties of delaying judicial review." *Miller*, 462 F.3d at 319.

### B.     *Motions to Dismiss Based on Doctrines of Abstention*

Although Defendants frame their motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, they really ask the Court to decline to exercise jurisdiction it does hold.

The Court generally has a "duty to exercise the jurisdiction that is conferred upon [it] by Congress[.]" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). But, the Court "may decline to exercise [its] jurisdiction . . . where denying a federal forum would clearly serve an important countervailing interest." *Id.*

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). Indeed, "[a]s has been reiterated time and again, the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (alteration in original) (quoting *Colo. River*, 424 U.S. at 817).

### C.     *Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted." Rule 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive the motion, a complaint must have "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an

unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint and all reasonable inferences are liberally construed in the plaintiff's favor. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Although the Court must accept the plaintiff's factual allegations as true, any conclusory allegations are unentitled to an assumption of truth, and even those allegations pled with factual support need be accepted only to the extent "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In sum, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption all the allegations in the complaint are true, even if doubtful in fact. *Twombly*, 550 U.S. at 555.

## IV.   DISCUSSION AND ANALYSIS

### A.   *Whether the NAACP's claims are ripe*

Defendants briefly argue the NAACP's claim is unripe because it has failed to request relief under Rule 610. The NAACP has asserted that Defendants have refused to consider its Rule 610 inquiries, and any official request would be futile.

The Court has found no case requiring that a plaintiff attempt every possible alternative before making a First Amendment right of access claim. *Cf. Whiteland Woods, L.P. v. Twp. of W. Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999) (reasoning right of access to meeting unrestricted by

ban on videotaping because spectators could gather information by other means, such as notes, audio recording, or stenographic recording, but stating no requirement that the plaintiff had showed it had attempted those methods before bringing its claim).

Thus, even if the NAACP's alleged communications with Defendants prove insufficient to constitute a Rule 610 request, the Court rejects Defendants' argument that this matter is unripe. *See Miller*, 462 F.3d at 318–19 ("The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in a 'clean-cut and concrete form.'" (quoting *Rescue Army*, 331 U.S. at 584). This case is thus justiciable under Article III.

### B. Whether the Court should abstain from addressing the NAACP's First Amendment challenge

Next, Defendants insist the Court should abstain from addressing the merits in this case out of deference to the state judicial branch. The NAACP maintains, however, that the First Amendment issues mandate the Court's consideration of this matter.

#### 1. Whether the Court may abstain if this case fails to fall squarely in an established abstention doctrine

Defendants avouch that the Court may abstain from this matter if doing so would generally serve the interests of federalism and comity. The NAACP, on the other hand, insists that this case must fall squarely into an existing abstention doctrine.

To "cabin" the discretion allowed by abstention doctrines, "the Supreme Court has 'carefully defined . . . the areas in which such abstention is permissible.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (alteration in original) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) (*NOPSI*)).

"[F]ederal courts may abstain only if a case falls into one of these specific doctrines[.]" *Schaefer*, 2 F.4th at 324 (internal quotation marks omitted). Defendants rely on the Seventh

Circuit's analysis in *Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018), to argue the Court may abstain in this case. In *Brown*, the Seventh Circuit ordered the district court to abstain in a case where "none of the 'principal categories of abstention constituted 'a perfect fit''" but "more general principles of federalism" counseled abstention. *Schaefer*, 2 F.4th at 325 n. 2 (quoting *Brown*, 908 F.3d at 1071).

But, the Fourth Circuit explicitly determined *Brown* was inconsistent with Supreme Court and Fourth Circuit precedent. *Id.* The Court must therefore rely on the holding in *Schaefer* and must consider whether an existing abstention doctrine applies in this case.

"To be sure, these discrete abstention doctrines 'are not rigid pigeonholes into which federal courts must try to fit cases.'" *Martin*, 499 F.3d at 364 (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 11 n. 9 (1987)). "But at the same time, the Supreme Court has *never* allowed abstention to be a license for free-form *ad hoc* judicial balancing of the totality of state and federal interests in a case." *Id.*

The Court thus agrees with the NAACP's narrow construction of the abstention doctrine. Although each doctrine "reflects a complex [set] of considerations[,]" *Johnson v. Collins Ent. Co., Inc.*, 199 F.3d 710, 728 (4th Cir. 1999) (alterations in original omitted), and "do not provide a formulaic test[,]" *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002) (quoting *Quackenbush*, 517 U.S. at 727), the Court must still act within the guidelines set forth by the Supreme Court.

Accordingly, for the Court to abstain from this case, the NAACP's claim must squarely implicate at least one of the abstention doctrines. *See Martin*, 499 F.3d at 364 ("Overlapping rationales motivate these doctrines and considerations that support abstaining under one will often

7

support abstaining under another."). Although Defendants admit neither doctrine it raises is on all fours with this case, the Court will nevertheless briefly consider each doctrine.

### 2. Whether the Burford *abstention doctrine is applicable*

First, Defendants posit abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), is analogous here. The NAACP maintains no issues of state law or policy prevent the Court from undertaking this matter.

*Burford* abstention is appropriate

> (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*NOPSI*, 491 U.S. at 361 (quoting *Colo. River*, 424 U.S. at 814). "This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Quackenbush*, 517 U.S. at 728 (quoting *Colo. River*, 424 U.S. at 813).

Courts have routinely declined to apply *Burford* abstention in First Amendment cases. *See, e.g.*, *Neufeld v. City of Baltimore*, 964 F.2d 347, 350 (4th Cir. 1992) (holding plaintiff's First and Fourteenth Amendment claims were a "poor candidates for *Burford* abstention"); *Felmeister v. Office of Att'y Ethics*, 856 F.2d 529, 534 (3d Cir. 1988) ("[W]e have serious doubts as to whether *Burford* abstention ever would be appropriate where substantial [F]irst [A]mendment issues are raised.").

Here, neither party represents this case will involve difficult questions of state law. The first type of *Burford* abstention is thus inapplicable.

Next, Defendants posit this case creates danger of disrupting Defendants' administrative decisions by improperly "elevat[ing] Plaintiff's policy judgment[.]" Defendants' Motion at 12. The NAACP insists its claim "is fundamentally a garden-variety challenge to the federal constitutionality of a state practice[.]" NAACP's Response at 14–15 (internal citation omitted) (internal quotation marks omitted) (internal alterations omitted).

The Court's involvement in this case would fail to deprive state courts of an opportunity to provide "definitive interpretation" of "very complex regulatory schemes[.]" *Donohoe Const. Co., Inc. v. Montgomery Cnty. Council*, 567 F.2d 603, 607 n.12 (4th Cir. 1977). In other words, Plaintiffs' fail to present a "state law [claim] in federal law clothing." *Johnson*, 199 F.3d at 721.

The Court considers whether the policy touches upon a "sensitive issue" of state policy so "talismanic" as to "requir[e] complete deference by the federal courts[.]" *Cox v. Planning Dist. I Comm. Mental Health and Mental Retardation Servs. Bd.*, 669 F.2d 940, 943 (4th Cir. 1982).

The Court recognizes the value of respecting the policy decisions of the state judicial branch. *See Fusaro v. Cogan*, 930 F.3d 241, 250 (4th Cir. 2019) ("[T]he decision to make government information available to the public is generally a question of policy for the political branches." (internal quotation marks omitted)). But that is outweighed by the importance of the constitutional questions presented before the Court. *See Cox*, 669 F.2d at 943 ("[T]here are instances in which the 'sensitivity' of state problems might be outweighed by the more vital constitutional policies expressed in the [F]ourteenth [A]mendment.").

Moreover, this case fails to present a threat to the proper administration of a state system. *See Neufeld*, 964 F.2d at 351 ("Of course, the threat that the federal courts might decide the entire state system unconstitutional is not a valid justification for *Burford* abstention."). To the extent a First Amendment violation exists, it is incumbent upon this Court to address it. On the other hand,

9

if Defendants have failed to violate the First Amendment, then the policies of the state judicial branch will remain respected and undisturbed.

The second type of *Burford* abstention is also thus inapplicable. As such, the Court will decline to exercise *Burford* abstention.

### 3. Whether the Pullman *abstention doctrine is applicable*

Second, Defendants argue the abstention principles in *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), analogize to this case. The NAACP contends the *Pullman* doctrine is inapplicable because there is no unsettled state law issue.

The *Pullman* abstention doctrine "is appropriate where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question." *Meredith v. Talbot County, Md.*, 828 F.2d 228, 231 (4th Cir. 1987).

The *Pullman* doctrine appears to the Court to be wholly inapposite. Defendants fail to identify which issues of state law may obviate the need to decide the NAACP's First Amendment claim.

The Court will thus decline to abstain under the *Pullman* doctrine as well.

### C. *Whether the Court should dismiss the NAACP's complaint for failure to state a claim under Rule 12(b)(6)*

Defendants avouch that even if the Court declines to abstain from this matter, it should dismiss the NAACP's complaint for failure to state a claim. The NAACP insists it has stated a claim that the First Amendment precludes Defendants' ban on scraping.

As an initial matter, Defendants ask the Court to consider the affidavit of Joel B. Hilke (Hilke) under Federal Rule of Civil Procedure 12(d) in evaluating its Rule 12(b)(6) arguments. The NAACP insists such consideration would be premature and unfair.

10

Rule 12(d) allows the Court to consider materials outside the pleadings and convert a Rule 12(b)(6) motion to a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) (providing that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"). But, the Court should refrain from doing so when "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

Here, the Court stayed discovery pending resolution of Defendants' motion to dismiss. Accordingly, converting Defendants' motion to a motion for summary judgment without discovery would be unfair to the NAACP. The Court thus declines to consider Hilke's affidavit in its resolution of this motion and turns to the parties' arguments on the merits.

There is no "First Amendment guarantee of a right of access to all sources of information within government control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978). Moreover, "[t]he right to speak and publish does not carry with it the unrestrained right to gather information." *Id.* at 12 (internal citation omitted) (internal emphasis omitted). In other words, the Court "must not confuse what is 'good,' 'desirable,' or 'expedient' with what is constitutionally commanded by the First Amendment." *Id.* at 13.

To determine whether the restrictions in this case infringe on the NAACP's First Amendment rights, the Court must engage in a multi-step analysis. First, it must determine whether Defendants' prohibition on scraping implicates a right protected by the First Amendment. *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 604–06 (1982). If so, the Court must then determine and apply appropriate level of scrutiny. *Id.* at 606–07.

> 1. ***Whether the NAACP has stated a claim that there is a deprivation of a general right of access to the records at issue sufficient to trigger First Amendment scrutiny***

Defendants insist that the NAACP has no First Amendment right to access the records in the Public Index, and, even if it does, the right is limited to exclude scraping. The NAACP maintains the First Amendment protects against the limited access.

Courts considering whether the First Amendment provides access to a particular court proceeding or record have used the "experience and logic test." *Schaefer*, 2 F.4th at 326 (internal quotation marks omitted). Under this test, courts consider two questions: whether the particular record "has historically been open to the press and general public" (experience prong) and whether "public access plays a significant positive role in the functioning of the particular process in question" (logic prong). *Id.* (internal alterations and quotation marks omitted).

Access to the records at issue, in some form, is historically available to the public. *See Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding access to civil docket sheets is protected); *Globe Newspaper*, 457 U.S. at 606 (determining access to judicial records is protected). And, "access allows the public to 'participate in and serve as a check upon the judicial process — an essential component in our structure of self-government.'" *Schaefer*, 2 F.4th at 327 (quoting *Globe Newspaper*, 457 U.S. at 606. Thus, for the purposes of the Rule 12(b)(6) motion, both the experience and logic prongs are satisfied here.

The Court is unconvinced by Defendants' argument that this case fails to implicate the First Amendment, because these records were historically unavailable online. Whether the First Amendment is implicated—i.e., the experience and logic test—depends on the type of record rather than the type of restriction to access. In other words, the type of restriction is best considered at the second step of the Court's analysis, discussed in the next section. *See id.* at 328 (assuming

that the experience and logic test focuses only on the type of record and analyzing the type of restriction at the second step: the application of First Amendment scrutiny).

Likewise, Defendants insist the ban on scraping fails to implicate the First Amendment because it is unrequired to provide unrestricted access to records. But, the validity of the restriction is more appropriately analyzed in determining whether it survives First Amendment scrutiny. The Court thus turns to the second step.

> 2. *Whether the NAACP has stated a claim that the restrictions fail First Amendment scrutiny*
>
>> a. *Whether the Court should apply intermediate scrutiny*

Defendants suggest that the Court should apply a "passing" level of scrutiny, although it fails to define exactly what it believes the required scrutiny to be. Motion at 24. On the other hand, the NAACP maintain strict scrutiny should apply, but that it would prevail under any level of scrutiny.

Strict scrutiny applies when a restriction constitutes a complete denial of access to public information, while intermediate scrutiny applies to "time, place, and manner" restrictions to access. *Globe Newspaper*, 457 U.S. at 607 n.17.

Here, it appears the NAACP alleges a time, place, and manner restriction, because it can access the records through manual searching methods, and the restriction is content-neutral. The Court will thus apply intermediate scrutiny to its analysis in this order. But, the Court would deny the motion to dismiss under any level of scrutiny.

>> b. *Whether, applying intermediate scrutiny, the NAACP states a claim*

Defendants maintain that even if a First Amendment right applies to access to the Public Index records, the NAACP's claim should fail because the prohibition on scraping is a content-

13

neutral policy of the state court. The NAACP maintains Defendants have failed to set forth a government interest for the ban.

"The critical question regarding a content-neutral restriction on the time, place, or manner of access to a government proceeding is whether the restriction meaningfully interferes with the public's ability to inform itself of the proceeding: that is, whether it limits the underlying right of access[.]" *Whiteland Woods*, 193 F.3d at 183.

Defendants are thus correct that the First Amendment provides the NAACP with less than an unfettered right to access court records. *See Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 9 (1986) ("[E]ven when a right of access attaches, it is not absolute."). Their extreme examples merely elucidate that obvious point. *See* Reply at 7 ("Would the clerk be required to permit [researchers] to take down a wall of the file room in order to more easily bring in its copiers and take out its copies?").

But, by that same token, Defendants lack unbounded discretion in determining the extent and manner of access. Employing a similarly extreme example, the First Amendment prevents Defendants from making the information available only on the third Thursday of each month from seven to seven-ten in the morning, and only to lawyers wearing orange shirts.

Such examples, then, do very little to aid the Court's analysis. The Court must look at the restrictions in each particular case. And, at this stage, the Court's task is to scrutinize the restrictions as alleged in the complaint.

The NAACP alleges that without scraping, it is impossible to gather the information quickly enough to meet the ten-day deadline to request a hearing. It alleges that scraping poses at most a *de minimis* burden on the functionality of the website.

As discussed above, it also contends suggested alternatives to scraping, such as Rule 610, are insufficient, and that Defendants have, in any event, indicated an unwillingness to provide the information under that rule. *See* Rule 610(e)(2) ("A request may be denied on the basis that: . . . the requestor may obtain the information using the search functions available to the public on websites maintained by the South Carolina Judicial Department or any court of this state[.]").

Further, it is unclear to the Court whether Rule 610 would apply to the NAACP's purposes. *See* Rule 610(e) (allowing disclosure of the records only when "the substantial public interest will be served through significant scholarly, governmental, journalistic, research, evaluation, or statistical purposes; and the identity of specific individuals is ancillary to the request").

True, the evidence may eventually show that Defendants have a sufficient reason to prohibit scraping. It may indicate that the NAACP's access to the records is unburdened by the restriction. Or, it may demonstrate that Defendants have provided sufficient alternatives to access the information. But, as alleged, the restrictions state a claim for violation of the First Amendment.

These factual disputes render determination of the First Amendment issues more appropriate for a motion for summary judgment. *See, e.g.*, *Rice v. Kempker*, 374 F.3d 675, 677, 678 (8th Cir. 2004) (affirming grant of summary judgment in similar First Amendment case); *Whiteland Woods*, 193 F.3d at 183, 185 (same).

Accordingly, the Court will deny the motion to dismiss. Because the preceding discussion is dispositive, the Court need not address the parties' remaining arguments. *See Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

## V. CONCLUSION

For the reasons stated above, it is the judgment of the Court Defendants' motion to dismiss is **DENIED**. The stay in this matter is hereby **LIFTED**. No later than one week from the date of this order, the parties shall submit a joint proposed amended scheduling order.

**IT IS SO ORDERED.**

Signed this 10th day of January 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
